Gablahd, J.
delivered the opinion of the court.
An affidavit was filed on the 16th of December, 1839, by Glendy Burke, one of the plaintiffs, alleging that Cowles Mead was- indebted to plaintiffs in the sum of $7960 10, without any specification of the manner of indebtedness, whether on account, note or draft, and that he resided out of the State. An attachment issued on this affidavit under which one hundred bales of cotton were seized, which, by agreement were delivered to Keyes & Roberts. The next day, a petition was filed hy Watt & Burke, styling themselves to be the firm of A. Fisk, Watt & Co., in liquidation, claiming from the defendant the sum mentioned, with interest at eight per centum from July 4th, 1836. They say they “ are holders and owners of a certain bill of exchange for the sum of $7960 10, drawn by B. G. Sims & Co. in liquidation, to the order of and indorsed by B. G. Sims on Cowles Mead, the said drawers waiving acceptance and presentation thereof to said Cowles Mead, the drawee of said bill which is indorsed hy A. Fisk, Watt & Co. dated at-on the 4th of January, 1836, payable at the Agricultural Bank in Natchez, on the 4th July, 1836,” which said hill at maturity was legally demanded, protested for nonpayment, and notice of demand and non-payment given to B. G. Sims & Co. They further allege the transfer of the draft and the issuing of the attachment. *570 In the month of April following, a supplemental petition was filed, alleging the loss of the draft, and diligent inquiry and search for it.
The defendant, for answer, says he is not liable for the draft, that long before it was made, the firm of B. G. Sims & Co. was dissolved, of which plaintiffs had notice. That the draft was signed by Sims without authority, and he is not bound by it.
On these pleadings the parties went to trial.
[335] Erom the evidence, it appears that Sims and Mead were in partnership, and transacted business to a large amount with Bisk, Watt & Oo.; the partnership was dissolved about the commencement of the year 1834, of which plaintiffs had notice. Bisk, on the 10th of June, 1833, in a letter to defendant, expresses his gratification at the approaching dissolution of the partnership, and gives notice that his house will not continue business with Sims & Oo. except in the way of reduction and liquidation. Vet, we find them in the years 1834 and 1835, continuing to deal with Sims, under the partnership style and in the name of B. G. Sims & Oowles Mead; charging them with large sums paid, remittances made and adding materially to the accounts by charges for commissions, for indorsements and acceptances. The balance apparently due on the account of B. G. Sims & Oowles Mead, of $4746 32, is charged to B. G. Sims & Oo., the 1st September, 1835, and the draft given in the name of the latter firm on the dormant partner, the acceptance waived by the drawer and protest made for non-payment, without the drawee and defendant having any notice. When the partnership was dissolved, it does not appear that Sims had any particular authority to liquidate its affairs or use the name as drawer or indorser of notes or drafts for that purpose, much less to contract new engagements.
In the case of Peters & Millard v. Gardère's syndic, 8 La. Rep. 568, it was held, after the dissoldtion of a firm neither party can bind the other without his authority. That authority must be derived not from their former relations as partners, but from a new contract between them. Such contract is 'essentially that of mandate. See also 6 La. Rep. 483 ; 4 Id. 32 ; Gow on Partnership, 230, 281, et seq. Sims had no authority to bind his partner; there is therefore no legal acknowledgment of the balance of accounts which plaintiffs claim. As to his demand on the accounts, he has not sufficiently established it, even if judgment could be rendered in the present state of the pleadings. But we do not well see how a judgment can be rendered for a [336] balance of account on a petition claiming the amount of a draft alleged to be lost, although it may be, as the judge of the commercial court calls it “ a mongrel Mississippi instrument.’’ We are not disposed to be at all technical, but pleadings should have a reasonable certainty, and some connection exist between the allegations and the evidence.
The judgment of the commercial court is therefore annulled, avoided and reversed, and a judgment of nonsuit rendered against the plaintiffs, with costs in both courts.